UNITED STATES

v.

Rockey J. REED, 441 60 4351, Captain
(O–3), U.S. Marine Corps.

NMCM 97 01378.

U.S. Navy–Marine Corps Court
of Criminal Appeals.

Sentence Adjudged 27 May 1997.

Decided 18 May 1999.

LCDR Linda J. Lofton, JAGC, USN, Appellate Defense Counsel.

Jack B. Zimmermann, Civilian Defense Counsel.

Terri R.Z. Jacobs, Civilian Defense Counsel.

LT Jeffrey K. Van Nest, JAGC, USNR, Appellate Defense Counsel.

Capt M.K. Jamison, USMC, Appellate Government Counsel.

Before DORMAN, Senior Judge, TROIDL, Senior Judge, and ROLPH, Appellate Military Judge.

DORMAN, Senior Judge:

A military judge, sitting as a general court-martial convicted the appellant, contrary to his pleas, of making two false official statements and the theft of a facsimile modem, in violation of Articles 107 and 121, Uniform Code of Military Justice, 10 U.S.C. §§ 907 and 921 (1994). As a result of this conviction, the military judge sentenced the appellant, who at the time of his trial had more than 19 years of service, to be dismissed from the United States Marine Corps. The convening authority approved the sentence.

We have carefully considered the record of trial, the appellant's five assignments of error, and the Government's response. We have also considered the excellent oral arguments of counsel presented before this court on 30 March 1999. We conclude that the findings and sentence are correct in law and fact and that no error materially prejudicial to the substantial rights of the appellant was committed. Arts. 59(a) and 66(c), UCMJ.

## Facts

Between November 1994 and May 1995 the appellant was the Inspector–Instructor [I & I] at the Marine Corps Reserve Center [MCRC] in Wichita, Kansas. As such, he was the senior Marine on site and the responsible officer for all equipment belonging to the MCRC. Working for the appellant was a contingent of about 12 other active duty Marines at the MCRC. In addition, the MCRC was the drill site of a reserve Electronics Maintenance Company, commanded by a reserve Marine major. In November 1994, the MCRC received a shipment from a computer equipment distributor that had been ordered for them by Marine Forces Reserve [MARFORRES] in New Orleans, LA. The shipping documents reflect that the shipment included a printer, Lotus Notes, and a Hayes Accura 144 + Fax 144 modem. The shipment came as a multipac box, containing two boxes that were placed outside the doorway of the appellant's office. One box was factory sealed and contained only the printer. The appellant had that box moved to the administrative office where the printer was installed shortly after it was received. The second box was moved into the appellant's office. Prosecution Exhibit 18; Prosecution Exhibits 11 and 14. When the appellant had the second box removed from his office, it had already been opened. Record 295–297, Prosecution Exhibit 18. At that time, the second box contained only the Lotus Notes—word processing software. None of the MCRC personnel recalled seeing the modem, or the distinctive pink box in which it was packed, at the time the shipment arrived or any time thereafter. Some, however, had seen the Lotus Notes.

During March 1995, the "admin shop" complained to the appellant about the speed of the electronic transmissions using their current modem. They also indicated that a faster modem was available from MARFORRES. The appellant tasked a member of the I & I staff, Gunnery Sergeant [GySgt] Benford, to procure a faster modem. Prosecution Exhibit 18. GySgt Benford contacted the MARFORRES G–6 office in New Orleans and was advised that a modem had already been shipped, and that it had come

with the printer and the Lotus Notes. Record at 252, 302. GySgt Benford then searched through his files and found the shipping documents, Prosecution Exhibits 11 and 12, in his unsecured desk. He testified that he had not seen the documents prior to that time, and the documents had not been in the factory sealed box that contained the printer.

When GySgt Benford told the appellant that the MCRC was missing a modem, the appellant did not seem upset. The appellant's reaction surprised GySgt Benford because the appellant had become upset by less menial things in the past. The appellant told GySgt Benford that he had not seen the modem, but he had seen an empty modem box and that it had been discarded by the reserves over the weekend. He then told GySgt Benford not to worry about it because he had one at home that he bought from a neighbor. Shortly thereafter, at a MCRC formation, it was determined that none of the Marines had seen the modem that had been shipped to the MCRC.

A wall-to-wall search of the MCRC was conducted, but the modem was not found. GySgt Benford checked with the Reservists to see if any of them had thrown away a modem box, and could not find anyone who had. The appellant then brought a Hayes Accura 144 + Fax 144 modem into the MCRC. The modem was contained in a shock box, a form-fitted box used for shipping that matches the shape of the modem. The appellant indicated that he was just loaning the modem to the MCRC until a replacement arrived. The serial numbers had been removed from the modem the appellant brought to the MCRC. The appellant told several members of the I & I staff that he had bought the modem from a neighbor.

Following a discussion with his Commanding Officer about the missing modem, the appellant conducted a preliminary investigation concerning its loss. The appellant completed this investigation and sent it to his Commanding Officer on 5 May 1995. Prosecution Exhibit 17. In the investigation, the appellant stated that the boxes had been stored in his office when they were received, but they were moved the following morning.

The printer was installed in the administrative section the following day. He also stated that the other box was opened, but not inventoried and "placed in the training/ISC office, where it remained for approximately two months. This box was stored next to, but not in a wall locker." Prosecution Exhibit 17. As a result of his investigation, the appellant concluded that the modem had been stolen.

While conducting the investigation both GySgt Grizzle and GySgt Benford provided written statements. Both statements indicated that the appellant told them that he had bought the modem he brought into the office from a neighbor. One statement indicated that the appellant had brought a Hayes Accura 144 + Fax 144 modem into the office in late March 1995. Neither statement indicated that the box containing the modem and the Lotus Notes had been placed in the training/ISC office. The appellant's preliminary inquiry did not indicate that he had brought a similar modem into the office, and it did not contain copies of the statements provided by GySgts Grizzle and Benford. The investigation was submitted in a letter format, however, and it was not unusual that there were no attachments.

When the appellant's Commanding Officer learned through other sources that the appellant brought a similar modem into the office, he appointed Captain Hardy, USMC, to conduct an investigation. During that investigation Capt Hardy questioned the appellant about the replacement modem he had brought into the office. In his written statement, the appellant claimed that he bought the modem from a retired Navy Chief he met at the MCRC in late February or early March 1995. Prosecution Exhibit 18.

### Sufficiency of Evidence

■ In his first two assignments of error, the appellant argues that the evidence of record was factually and legally insufficient to support his conviction. The test for legal sufficiency requires this court to review the evidence in the light most favorable to the Government. In doing so, if any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt, the evidence is legally sufficient.

*Jackson v. Virginia,* 443 U.S. 307, 318–19, 99 S.Ct. 2781, 61 L.Ed.2d 560; *United States v. Turner,* 25 M.J. 324, 325 (C.M.A.1987). Without question, with regard to both false official statements and the larceny, that standard is met in this case.

■ The test for factual sufficiency is whether, after weighing the evidence in the record of trial and making allowances for not having personally observed the witnesses, this court is convinced of the accused's guilt beyond a reasonable doubt. *Turner,* 25 M.J. at 325. Reasonable doubt, however, does not mean the evidence must be free from conflict. *United States v. Lips,* 22 M.J. 679, 684 (A.F.C.M.R.1986). "The factfinders may believe one part of a witness' testimony and disbelieve another." *United States v. Harris,* 8 M.J. 52, 59 (C.M.A.1979). In resolving the question of factual sufficiency, we have carefully reviewed the record of trial, the arguments and briefs of counsel, and have given no deference to the factual determinations made at the trial level. Based on that review, we are convinced beyond a reasonable doubt of the appellant's guilt.

■ **False Official Statements.** The appellant stands convicted of having made two false official statements with the intent to deceive. The elements of that offense are: the appellant made an official statement; the statement was false in certain particulars; the appellant knew that it was false at the time he made it; and that the appellant made the statement with the intent to deceive. MANUAL FOR COURTS-MARTIAL, UNITED STATES (1995 ED.), PART IV, ¶ 31b. In order to affirm his conviction of these two offenses we must be convinced beyond a reasonable doubt of the elements with respect to each offense.

Specification 1 of Charge I alleges that a false official statement is contained within the appellant's preliminary investigation into the loss of the modem. The alleged false statement concerns the appellant's statement that the second box was "placed in the training/ISC office (next to, but not in a wall locker) the morning after the box was received by the unit and remained in the training/ISC office for approximately two months." Charge Sheet.

Numerous witnesses testified that they had seen a box of computer gear in the appellant's office during the relevant time period. GySgt Benford testified that the appellant asked him to move the brown multipac box containing the Lotus Notes out of the appellant's office one or two weeks after he first saw it in the appellant's office. There was no modem in the multipac box. GySgt Benford removed the multipac box from the appellant's office and he placed its contents [the Lotus Notes] in the vault. He testified that he did not place anything from the multipac box in the training office. GySgt Benford's recollection of the facts is corroborated by Master Sergeant Brame. He testified that he occupied the training office, an area of about 20 X 30 feet, between 1 November 1994 and the end of March 1995. During that time period no software was stored in the training/ISC office, next to the wall locker. No evidence was introduced to support the appellant's version that the gear had been stored in an unsecured area for several months. We find this evidence is both legally and factually sufficient to affirm this conviction.

Specification 2 of Charge I alleges that the appellant's statement to Capt Hardy, that he bought the modem he loaned to the MCRC from a former Navy chief, is false. Here, too, we find the evidence is both legally and factually sufficient to sustain his conviction for making that false official statement. We note that the appellant initially stated that he bought the modem from a neighbor, perhaps at a yard sale. We further note that the appellant's wife testified that she saw this modem in their home in February of 1995. Finally, the appellant's attempt to corroborate the purchase from the retired Navy chief was unsuccessful. The appellant referred Capt Hardy to a Navy recruiter, MS1 Collins, who also had an office in the MCRC. Capt Hardy interviewed MS1 Collins, but found that his recollection did not comport with the appellant's. MS1 Collins also testified at trial. He recalled standing outside and smoking a cigarette with the appellant, a potential recruit, and an individual who identified himself as a retired Navy chief and who matched the scruffy appearance the appellant ascribed to him. MS1 Collins did not

hear the "chief" offer anything for sale or even discuss computer equipment, and the appellant never indicated to MS1 Collins that he had gotten a good deal on a computer modem from the "chief". More importantly, MS1 Collins recalls that the meeting occurred well after the date alleged by the appellant, and after the period of time appellant's wife had already seen the modem in their home. MS1 Collins specifically recalled that meeting occurred after a snowstorm in March 1995, and also that it was light out at the time of the early evening meeting. Although MS1 Collins' recollection corroborates the existence of the "chief", it also eliminates him as the source of the modem the appellant brought into the MCRC.

■ **Larceny.** In order to sustain the appellant's conviction for the theft of the modem, we must be convinced beyond a reasonable doubt of each of the five elements of larceny. As they apply to this case, we must be convinced that the appellant took the modem, that it belonged to the United States, that is was worth $145, that the appellant intended to keep it, and that it was military property. MCM, Part IV, ¶ 46b(1). As appellant argues, this is a case based on circumstantial evidence. In general, findings may be based on circumstantial evidence, and specifically, the intent to steal can be so proved. RULE FOR COURTS-MARTIAL 918(c); MCM, PART IV, ¶ 46c(1)(f)(ii). We find the evidence presented in this case, coupled with the inferences that may be permissibly drawn therefrom, to be particularly compelling. Accordingly, we find that the evidence is both legally and factually sufficient to sustain the appellant's conviction for stealing the modem.

The appellant attacks the sufficiency of the evidence of larceny across a broad spectrum. He suggests that the modem was never received by the MCRC. Appellant's Brief of

10 July 98 at 10–11. He also argues that there is no direct proof that he took the modem, or that the taking was with the intent to permanently deprive the Government of the modem. Appellant's Brief of 10 July 1998 at 11–12. He next argues that the Government's theory of the case is flawed because the modem the appellant brought to the MCRC in March 1995 is a different version of the modem that was shipped. Appellant's Brief of 10 July 1998 at 12–13. Citing *United States v. Pond*, 17 U.S.C.M.A. 219, 38 C.M.R. 17 (C.M.A.1967),[1] he argues that the evidence of his good military character is sufficient to raise reasonable doubt in this case. Finally, the appellant asks a series of rhetorical questions concerning motive and his alleged behavior, suggesting that the answers to those questions also create reasonable doubt.[2] Appellant's Brief of 10 July 1998 at 15–17.

We have carefully considered each of the appellant's arguments, but find that the record provides more than enough testimonial, documentary and circumstantial evidence to sustain the appellant's conviction for the theft of the modem. The following evidence supports the findings that the modem was received, that the appellant took it, and that he intended to permanently deprive the Government of its use:

> In early November 1994 a multipac box was received at MCRC. The packing list for the box indicated that the shipment contained a printer, Lotus Notes, and a modem. MARFORRES in New Orleans had ordered these items for the MCRC. Headquarters also ordered modems for other units, none of which reported a problem with the shipment.
>
> When the shipment arrived at the MCRC it was placed in the appellant's office. The printer was soon thereafter

---

1. Appellant cited this case to us in his brief and during oral argument. While it generally stands for the proposition that evidence of good military character can be sufficient to create reasonable doubt, the Court of Military Appeals did not reverse *Pond* on that basis. Rather the reversal resulted from error committed by the military judge when he excluded relevant defense evidence and failed to instruct on the credibility of witnesses. Since the Court of Military Appeals

returned the case to the board of review for reconsideration, sufficiency of the evidence was not the determining issue.

2. Since neither motive nor the reasons why the appellant behaved as he did are elements of the offense of larceny, we need not speculate as to the appellant's motive, or to the answers to his rhetorical questions.

installed in the admin section of the MCRC, but the second box of the multi-pac shipment remained in the appellant's office.

When the second box was removed from the appellant's office it had already been opened. All that was in the box at that time were the Lotus Notes.

When the appellant was advised that the MCRC was missing a modem he was, uncharacteristically, not upset, saying he had one at home that he could bring in.

The modem appellant brought to the MCRC was virtually identical to the one that had been shipped. The serial number for the modem normally could be found at three locations: the bottom of the modem, on the box it was packaged in, and on the registration card inside the box. Although the modem appeared new, the serial numbers on the modem had been removed, and the appellant did not bring the registration card or the box to the MCRC.

The appellant told the MCRC staff that the modem he brought in was just a "loaner".

The appellant was apparently reluctant to conduct an investigation into the loss of the modem and did not do so until after he had spoken with his Commanding Officer.

The appellant did not inform his Commanding Officer that he had brought a virtually identical modem into the MCRC.

The appellant told differing accounts about where he had obtained the modem he brought to the MCRC.

The appellant told differing accounts about what happened to the modem box he had seen in the MCRC. In one account he claimed he told a reservist to throw it away. The reservist testified that the appellant had not given him any such directions. In another account, the appellant claimed he took the distinctive "pink" modem box back to his office where he put it on his bookshelf and piled papers on top of it. Of all the Marines at the MCRC, only the appellant recalled seeing the box.

We find that the evidence of record establishes that the modem was received by the MCRC in early November 1994. The shipping documents and the modem were contained in the multipac box that was placed in the appellant's office. When the appellant asked that the box be removed from his office it had already been opened, and neither the modem nor the shipping documents were in the box. Clearly the appellant had the opportunity to remove the modem. When his staff finally discovered that a modem had been shipped to the MCRC, the appellant brought in a virtually identical modem, but then told different accounts concerning where he obtained the modem he was loaning to the MCRC. We find his statement that he was merely loaning that modem to the MCRC as proof of his intent to permanently deprive the Government of the stolen modem. We also find his retention of the stolen modem until such time as it was discovered missing to also be evidence of larcenous intent. Finally we have also considered appellant's false official statements as evidence of his consciousness of guilt of larceny. *See United States v. Colcol,* 16 M.J. 479, 483 (C.M.A.1983); *United States v. Jones,* 34 M.J. 899, 909 (C.M.R.1992); and *United States v. Elmore,* 31 M.J. 678, 684–85 (C.M.R.1990).[3]

◼ Appellant also forcefully argues that the Government's case is undermined by the fact that the modem shipped to the MCRC in

---

**3.** The Government also presented evidence that a modem was anonymously mailed to the appellant. Along with the modem was a note explaining that the modem was mailed to appellant because the sender had heard that the appellant was in trouble, and that the modem was sent as a replacement for the one the sender had taken and broke. This modem was sent to the appellant from Oklahoma City, Oklahoma, and post-marked on a day that appellant had a meeting in Tulsa, Oklahoma. Although there was no evidence that the appellant was in Oklahoma City on the day the package was mailed, the Government established that it was about a 2–hour drive between Oklahoma City and Tulsa. The Government's theory, presented through argument, was that the appellant mailed this modem to himself. In our consideration of the record, we have given no weight to this evidence.

November 1994 was a different version of a Hayes Accura modem than the one the appellant brought to the MCRC in March 1995. Appellant bases this argument upon an exhibit contained in the Article 32, UCMJ, investigation, which is attached to the record of trial. He further argues that we should consider this evidence in our deliberations. In support of that position he cites *United States v. Hayes,* 40 M.J. 813, 814 n. 1 (C.G.C.M.R.1994). We have also found support for that position in *United States v. Strode,* 39 M.J. 508 (A.F.C.M.R.1993); *United States v. Norris,* 33 M.J. 635 (C.G.C.M.R. 1991); and *United States v. Rhodes,* 40 C.M.R. 462, 463–64, 1969 WL 6118 (A.B.R. 1969). Since none of these decisions are binding upon us, we decline to follow these decisions. Rather we will follow decisions from our superior Court, as well as our own precedent.

Subsequent to the Army Board of Review decision in *Rhodes* and the Court of Military Appeals cases cited therein, our superior Court pronounced the view that the Article 32, UCMJ, investigation ought not be consulted on appeal. In *United States v. Bethea,* 22 U.S.C.M.A. 223, 46 C.M.R. 223, 225, 1973 WL 14486 (1973), our superior Court wrote:

> Undeniably, evidence not presented at the trial cannot be used to support or reverse a conviction. Both the accused and the Government are entitled to challenge the admissibility of the evidence according to accepted rules of law; and each has a right to test the trustworthiness and the probative value of proffered evidence by cross-examination, and by other evidence. Different considerations apply to the sentence . . . we believe that the makers of the law intended that factual determinations germane to a finding on the merits should be based on evidence that has been exposed to cross-examination or the right to cross-examine.

The decision in *Bethea* has been followed by our superior Court on subsequent occasions. *See, e.g., United States v. Thompson,* 33 M.J. 218, 222 n. 5 (C.M.A.1991); *United States v. Armstrong,* 9 M.J. 374, 376 (C.M.A.1980). Furthermore, Judge Wiss cautioned the Courts of Military Review that "[t]here are *some* places where even 'the proverbial 800–pound gorilla'[4] is not free to roam." *United States v. Parker,* 36 M.J. 269, 273 (C.M.A.1993)(citing *United States v. Bethea,* 22 U.S.C.M.A. 223, 46 C.M.R. 223 (1973)) (Wiss, J. concurring). See also *United States v. Hill,* 39 M.J. 712, 715 (C.M.R.1993)(defining review of the "entire record" as a review of evidence presented at trial).

We, therefore decline the appellant's invitation to "roam" through the exhibits presented during the Article 32, UCMJ, Investigation. Furthermore, our determination that the appellant's guilt of larceny is established beyond a reasonable doubt is not dependent upon whether the modem the appellant brought into the MCRC in March 1995 is the same modem as that which was delivered to the MCRC in November 1994. Accordingly, we affirm the appellant's larceny conviction for the theft of the modem.

### The Dismissal

In the appellant's remaining three assignments of error he challenges his dismissal. He argues that a dismissal is inappropriately severe and that it is unconstitutional because it is grossly disproportionate to the offenses of which he was convicted and because it is tantamount to an excessive fine.[5] In both constitutional arguments, he asserts a violation of the Eighth Amendment to the Constitution. We do not concur. We will first consider the appellant's two constitutionally based arguments.

As a standard of review, the appellant invites us to apply the criteria set out in *Solem v. Helm,* 463 U.S. 277, 291–292, 103 S.Ct. 3001, 3010 (1983) to determine the con-

---

4. Whether our powers are equated to an 800–pound gorilla, or that of "a big bear of a Court," as used by appellate defense counsel in this case, Judge Wiss' message is clear.

5. For purposes of this argument we accept as fact appellant's assertion that as a result of his dismissal he would lose in excess of $700,000 in lifelong retirement pay, based on his normal life expectancy. Appellant's Brief of 10 July 1998 at 18. This information was not presented at trial.

stitutionality of appellant's dismissal. We believe, however, that the Supreme Court has retreated from the broad application of the *Solem* criteria. *See Harmelin v. Michigan,* 501 U.S. 957, 111 S.Ct. 2680, 115 L.Ed.2d 836 (1991). In *Harmelin,* Justice Scalia, joined by the Chief Justice, would only use the *Solem* criteria when reviewing death penalty cases. Three other Justices would apply Solem in other cases, but with the following limitation, "the Eighth Amendment does not require strict proportionality between crime and sentence. Rather, it forbids only extreme sentences that are 'grossly disproportionate' to the crime." *Id.* at 959, 111 S.Ct. at 2683, 115 L.Ed.2d at 869 (Kennedy, J. concurring)(quoting *Solem,* at 288, 303, 103 S.Ct. 3001, 77 L.Ed.2d 637). *See also United States v. Maxwell,* 45 M.J. 406, 427 (1996).

■ We, therefore, base our review upon the following criteria. First, is the sentence grossly disproportionate to the crimes of which the appellant was convicted? Second, if that review leads to an inference of gross disproportionality, then it is appropriate to consider the appellant's sentence in relation to other sentences for similar crimes both within the military justice system and other criminal justice systems. *See Maxwell,* 45 M.J. at 406.

■ We have applied those criteria to the appellant and the facts of this case, and we do not find the sentence to be grossly disproportionate. Accordingly, we do not find that his sentence to a dismissal violates the Eighth Amendment.

■ We also find his dismissal does not violate the excessive fine proscription of the Eighth Amendment. *See United States v. Lee,* 43 M.J. 518, 520–21 (A.F.Ct.Crim.App. 1995). While the collateral consequences of the dismissal will result in the loss of substantial retirement benefits, the sentence does not require the appellant to render any payment to the Government. The consequences of this sentence operate no differently than any other punitive discharge imposed upon an accused with vested or near vested retirement benefits. Furthermore, we are confident that the military judge who im-

posed the sentence was well aware of its collateral consequences.

We recognize that the review of the constitutionality of a sentence is distinct from a determination of whether a sentence is appropriate. While the sentence is constitutional, it still could be inappropriate. In support of his argument that his sentence to a dismissal is too severe, appellant relies upon his, admittedly, outstanding military record. Appellant's military record was so outstanding in fact that he was selected from the enlisted ranks to become a warrant officer, and then eventually a commissioned officer.

The appellant presented evidence that he is the sole source of financial support for his family, and that his family was counting on receiving his retirement income. He also presented evidence concerning the counseling needs for his 13–year old daughter, and that he and his wife planned to live near a military facility upon retirement to take advantage of his military benefits, to include continued counseling for his daughter. Both the appellant and his wife made clear that the appellant was needed at home. All this evidence was presented to the military judge prior to sentencing.

After trial the appellant submitted a substantial clemency package to the convening authority. In that request for clemency the appellant included 33 enclosures. Those enclosures further detail his daughter's medical problems and also further corroborate the appellant's outstanding service record. The convening authority considered these matters, as well as the record of trial, prior to taking action in this case.

Regarding the issue of sentence appropriateness, the appellant essentially argues that his sentence to a dismissal is inappropriate due primarily to his outstanding military record, when compared to the relatively minor nature of his offenses. While we readily acknowledge the appellant's noteworthy military record, we do not find his offenses to be minor. At the time the appellant stole the modem from the MCRC he was the senior officer at that remote Marine Corps location. His unit needed the item he stole to better execute its mission. Once members of his

unit discovered that the MCRC had received the modem, the appellant compounded his initial crime through deceit and falsehoods, first as an investigating officer and then as the subject of an investigation.

More is expected of a Marine officer than of enlisted Marines, and even more is expected of a Marine Officer who is the senior officer present. See *Parker v. Levy*, 417 U.S. 733, 744, 94 S.Ct. 2547, 41 L.Ed.2d 439 (1974); *United States v. Means*, 10 M.J. 162, 166 (C.M.A.1981). While the dollar value of the item stolen was rather insignificant the appellant's crimes were not, particularly so where many of his direct subordinates were aware of their senior officer's theft and deceit. For his crimes the appellant faced a maximum punishment that included confinement for 20 years, forfeiture of all pay and allowances, a fine, and a dismissal.

The military judge appears to have afforded the appellant the individualized consideration based on the "nature and seriousness of the offense and the character of the offender" to which he was entitled. *United States v. Snelling*, 14 M.J. 267, 268 (C.M.A.1982). This is particularly apparent, given the maximum sentence that the military judge could have imposed, and the fact that the appellant did not exhibit either remorse or contrition.

In this case we conclude that the appellant does not seek an appropriate sentence, he seeks clemency. "Sentence appropriateness involves the judicial function of assuring that justice is done and that the accused gets the punishment he deserved." *United States v. Healy*, 26 M.J. 394, 395 (C.M.A.1988). Clemency, however, is a not a judicial function at all, it is the prerogative of the convening authority. *Id.* at 395. In spite of the appellant's impressive clemency petition directed to the convening authority, clemency was not granted. We will not second-guess that decision. We are convinced that the sentence approved by the convening authority is appropriate in this case.

### Conclusion

Following our careful review of this case, we affirm the findings and the sentence as approved by the convening authority.

Senior Judge TROIDL and Judge ROLPH concur.