# UNITED STATES NAVY-MARINE CORPS
# COURT OF CRIMINAL APPEALS
# WASHINGTON, D.C.

**Before**
**J.A. FISCHER, R.Q. WARD, K.M. MCDONALD**
Appellate Military Judges

**UNITED STATES OF AMERICA**

v.

**NICOLAS VEGA JR.**
**STAFF SERGEANT (E-6), U.S. MARINE CORPS**

**NMCCA 201300277**
**GENERAL COURT-MARTIAL**

**Sentence Adjudged:** 8 March 2013.
**Military Judge:** LtCol Elizabeth Harvey, USMC.
**Convening Authority:** Commanding General, 3d MAW, San Diego, CA.
**Staff Judge Advocate's Recommendation:** Col K.C. Harris, USMC.
**For Appellant:** LT Jennifer Myers, JAGC, USN.
**For Appellee:** LCDR Keith Lofland, JAGC, USN; LT Lindsay Geiselman, JAGC, USN.

**31 December 2014**

---------------------------------------------------------
**OPINION OF THE COURT**
---------------------------------------------------------

**THIS OPINION DOES NOT SERVE AS BINDING PRECEDENT, BUT MAY BE CITED AS PERSUASIVE AUTHORITY UNDER NMCCA RULE OF PRACTICE AND PROCEDURE 18.2.**

PER CURIAM:

A military judge sitting as a general court-martial convicted the appellant, contrary to his pleas, of one specification of committing an indecent act and one specification of extortion, in violation of Articles 120 and127, Uniform Code of Military Justice, 10 U.S.C. §§ 920 and 927. The military judge sentenced the appellant to confinement for

Senior Judge Ward participated in the decision of this case prior to commencing terminal leave.

two years, reduction to pay grade E-1, and a bad-conduct discharge. The convening authority approved the sentence as adjudged.

On appeal, the appellant asserts four assignments of error: (1) the evidence is factually and legally insufficient to sustain his convictions; (2) the military judge erred by excluding evidence under MILITARY RULE EVIDENCE 412, MANUAL FOR COURTS-MARTIAL, UNITED STATES (2012 ed.); (3) the military judge erred by excluding evidence of a text message that the appellant sent to the victim; and, (4) the military judge erred by failing to exclude evidence that had not been disclosed to the defense prior to trial.[1]

After carefully considering the record of trial and the submissions of the parties, we are convinced that the findings and the sentence are correct in law and fact, and that no error materially prejudicial to the substantial rights of the appellant was committed. Arts. 59(a) and 66(c), UCMJ.

## Factual Background

The charges against the appellant stem from a sexual encounter with AMT on 3 May 2012. The two began dating in December of 2009 and their relationship became sexual soon thereafter. Although the couple broke up several months later, they continued to see each other on occasion and engage in consensual sexual activity. This continued until several months before AMT gave birth to the appellant's daughter, KT, in December 2010. While they dated, the two occasionally exchanged sexually explicit photos and texts via their cell phones.

After they broke up, both the appellant and AMT began dating other people, though they did contact each other regarding their daughter, KT. Although initially amicable, the relationship soured over KT's custody, visitation, and child support.

After the appellant repeatedly tried to convince AMT to lower his child support, the two eventually discussed a stipulation in which the appellant would forfeit any visitation rights in exchange for AMT waiving his child support obligation. After each consulted with a lawyer, they agreed to meet in order for him to sign the stipulation.

---

[1] The appellant's fourth assignment of error is raised pursuant to *United States v. Grostefon*, 12 M.J. 431 (C.M.A. 1982). We have reviewed assignments of error (2) – (4) and find no merit. *United States v. Clifton*, 35 M.J. 79 (C.M.A. 1992).

On 3 May 2012, the appellant picked AMT up a block from her residence and drove her on base where he had rented a room. Although she willingly accompanied him in his car, she had no idea where he was taking her. Once in the room, AMT alleged that the appellant sexually assaulted her on the bed, and with his iPhone took multiple photographs and a video of her during and immediately after the sexual assault.[2]

At trial, AMT testified to the following regarding the appellant taking the photos and video with his iPhone:

Q: Okay. And what did you do at that point?
A: At that point, I tried to, like, wiggle out of his grasp and that's where I first remember seeing the phone. He pulled the phone out from, like, under a pillow or something. . . . That's when I first saw the phone and I remember him pulling it out from under a pillow.

Q: What happened when he pulled the phone out?
A: That's when he tried – he pointed it at me, and I figured he was taking pictures and I kept trying to get away and pull away.

Q: Did you want him to take pictures of you?
A: No, I didn't.

Q: Did you tell him?
A: Yeah. I kept telling him.[3]
. . . .

Q: . . . [Y]ou were walking to the [appellant]?
A: Yes, I was walking over to him. I knew that he was pointing the camera at me, so I figured that he was taking pictures and stuff, so I was trying to hit it out of his hands because I didn't want pictures or anything being taken.[4]

After the sexual encounter, AMT testified that using her cell phone she took a video of the appellant, and explained as follows:

_____

[2] *Id*. at 357. The military judge found the appellant not guilty of rape, forcible sodomy, aggravated sexual assault, and kidnapping. *Id.* at 1316.

[3] *Id*. at 352.

[4] *Id*. at 364.

Q: What were you talking about at that point?
A: At that point, it was – he needed to take pictures. I kept asking, why? He said he needed to take pictures and videos to kind of cover his ass to make sure I didn't file for child support after the stipulation was signed.  And so I felt that, to me that was kind of like extorting me, so I wanted to take a video, like, getting him to say that.[5]

AMT then described how the appellant continued to discuss the photographs in his car as he drove her home:

Q: So what's the discussion in the car going home?
A: For a while, it was him telling me that no one would be able to find the pictures and stuff because he had an email no one had a password to. If I just didn't say anything then no – like if I didn't file for child support, no one would find out and stuff. . . .[6]

. . . .

Q: Okay.  Now, we had previously spoken about on the way home and the conversation leading up to, you testified that the [appellant] had told you that as long as you didn't [inaudible] child support that he would not what?
A: Show anybody the pictures that he had taken.

Q: Okay.  So what did that mean to you?
A: That meant, like, showing my boyfriend . . . [and] seeing the pictures online or anything.[7]

### Legal and Factual Sufficiency

The appellant contends that his convictions for committing an indecent act and extortion are legally and factually insufficient.  For the indecent act offense, he argues that he had a reasonable mistake of fact defense based on the couple's prior relationship, and furthermore AMT had no reasonable

_____

[5] *Id*. at 364-65.

[6] *Id*. at 372.

[7] *Id*. at 378.

4

expectation of privacy where she knew the appellant had a camera. Appellant's Brief of 22 Jan 2014 at 16. For the extortion offense, he points to AMT's lack of credibility and motive to fabricate. *Id*. at 24-25. We disagree.

The test for legal sufficiency is whether, considering the evidence in the light most favorable to the Government, any rational trier of fact could have found the elements of the offense beyond a reasonable doubt. *United States v. Turner*, 25 M.J. 324, 324 (C.M.A. 1987); *United States v. Reed*, 51 M.J. 559, 561-62 (N.M.Crim.Ct.App. 1999), *aff'd*, 54 M.J. 37 (C.A.A.F. 2000); *see also* Art. 66(c), UCMJ. The test for factual sufficiency is whether, after weighing all the evidence in the record of trial and recognizing that we did not see or hear the witnesses, this court is convinced of the appellant's guilt beyond a reasonable doubt. *Turner*, 25 M.J. at 325; *see also* Art. 66(c), UCMJ. Proof beyond a reasonable doubt does not mean that the evidence must be free of conflict. *United States. v. Goode*, 54 M.J. 836, 841 (N.M.Ct.Crim.App. 2001) (citation and quotation marks omitted).

1. Indecent Act

It is clear from the record that the appellant took photographs of AMT's genitalia, buttocks, and breasts. Therefore we focus on whether the appellant had a reasonable mistake of fact as to her consent, and whether AMT held a reasonable expectation of privacy.

a. *Mistake of fact as to consent*

While they were dating AMT sent the appellant nude photographs of herself.[8] However, their relationship ended long before their meeting on 3 May 2012, and both were in ostensibly monogamous relationships.[9] When the appellant contacted AMT about meeting, AMT was initially reluctant unless the appellant was willing to sign the stipulation memorializing their agreement. Although AMT admitted she was somewhat flirtatious at first, she repeatedly asked the appellant whether he would sign the stipulation and further reminded him that "[they] aren't going to do anything. . ." Prosecution Exhibit 15 at 2. Once she mentioned her boyfriend would be present if they met,

---

[8] *Id*. at 331.

[9] Although the appellant told investigators that the two on occasion engaged in sexual intercourse after they broke up, AMT only acknowledged one sexual encounter after they broke up and that occurred in March 2012. *Id*. at 332.

the appellant told her to "[f]orget it"; however, he later agreed to sign the stipulation only if she met him alone. *Id.* at 7-8.

In the relevant photos AMT is unclothed and her genitalia, buttocks, and breasts are visible. She is either not facing the camera or covering her face.[10] In the video at issue AMT can be seen trying to hit the appellant's phone out of his hand.[11] Nothing in these images indicates that AMT is consenting to being photographed or recorded. Moreover, AMT testified that she did not want the photos taken, that she told the appellant to stop, that she tried to avoid him taking the photos, and that she attempted to hit his cell phone out of his hand.

We are not persuaded by the appellant's argument that his prior relationship with AMT, to include their exchanging sexually provocative images while they were dating, gave rise to his reasonable mistake of fact. AMT testified that she did not send any more photos of herself to the appellant after they broke up in 2011, except for a single image she texted him in early 2012 of her in lingerie. The appellant points to his partial acquittal as evidence of AMT's consent to sexual activity and by extension to pictures thereof, or at least his reasonable mistake of fact. But any subjective belief on his part is undermined by the fact that he kept his iPhone under a pillow until the opportunity arose for a revealing photo. Then, despite AMT's efforts to shield her face, the appellant continued to take more pictures. We are convinced beyond a reasonable doubt that any mistaken belief that AMT consented was unreasonable under these circumstances.[12]

*b. Reasonable Expectation of Privacy*

Military courts have only recently discussed reasonable expectation of privacy with regards to Article 120(k).[13] In *United States v. Raines*, No. 201400027, 2014 CCA LEXIS 600, unpublished op. (N.M.Ct.Crim.App. 21 Aug 2014), we recently addressed whether one who consents to sexual activity implicitly

---

[10] PE 5(b) and 5(c).

[11] PE 5(d).

[12] MANUAL FOR COURTS-MARTIAL, UNITED STATES (2012 ed.), Part IV, ¶45(t)(15).

[13] Although not expressly defined in the 2008 Manual, the 2012 Manual defines "reasonable expectation of privacy" as "[c]ircumstances in which a reasonable person would believe that he or she could disrobe in privacy, without being concerned that an image of a private area of the person was being captured . . . ." MCM, Pt. IV, ¶45c.(c)(3).

6

consents to the recording of that activity.  In *Raines* the appellant surreptitiously recorded consensual sex acts with multiple female partners.  We found that the victims had a reasonable expectation of privacy in their naked bodies despite their consent to the sexual activity.

The facts at bar are somewhat analogous to *Raines*.  Here the appellant did not make AMT aware of his intent until he reached under a pillow, retrieved his iPhone, and attempted to photograph her despite her verbal and physical efforts to stop him from doing so.  Simply because she provided him with a sexually explicit image(s) of herself in the past while the two were dating does not divest her of any future expectation of privacy from similarly revealing images.  Under these circumstances, we find that these images were taken contrary to AMT's reasonable expectation of privacy.

## 2. Extortion

Article 127 prohibits the communication of threats to another person "with the intention thereby to obtain anything of value or any acquittance, advantage, or immunity[.]"  It is sufficient if there is some "value" or "advantage" to the thing sought as the terms are broad concepts and are not limited to pecuniary or material gain.  *United States v. McCollum*, 13 M.J. 127, 129-30 (C.M.A.1982); *see also United States v. Brown*, 67 M.J. 147, 149 (C.A.A.F. 2009) (holding that a threat to release a sexually explicit videotape of the victim in order to obtain continued sexual relations constituted an advantage for purpose of extortion).

AMT testified that the appellant threatened to release these photographs to her boyfriend and others if she later sought to enforce his child support obligation.[14]  During his interrogation, the appellant explained to investigators that his lawyer counseled against signing the stipulation because nothing would legally prevent AMT from later seeking child support.[15]  That their relationship was strained over the subject of custody and child support is not in dispute, nor was the appellant's desire to relieve the financial strain of his child support obligation.[16]  It was, as he told investigators ultimately "a child custody thing.  We both don't trust each other.  She tried to hide her hooking up from her boyfriend.  But like I told her,

---

[14] Record at 364, 372, 378.

[15] PE 18; Appellate Exhibit XXXIX at 7, 27.

[16] AE XXXIX at 11-14, 27, 32.

I told her numerous times: I record shit . . . ." Appellate Exhibit XXXI at 24. We find that the appellant's actions in threatening to release these images if AMT sought child support payments sufficient to constitute an "advantage" within the meaning of Article 127, UCMJ.

After carefully reviewing the record of trial and considering the evidence in the light most favorable to the prosecution, we are convinced that a reasonable fact finder could have found all the essential elements of the offenses beyond a reasonable doubt. Furthermore, after weighing all the evidence in the record and having made allowances for not having personally viewed the witnesses, we are convinced beyond a reasonable doubt of the appellant's guilt.

## Conclusion

We affirm the findings and the sentence as approved by the convening authority.

For the Court

R.H. TROIDL
Clerk of Court