UNITED STATES, Appellant

v.

Jose R. CABRERA-FRATTINI, Lance Corporal
U.S. Marine Corps, Appellee

No. 07-5001

Crim. App. No. 200201665

United States Court of Appeals for the Armed Forces

Argued February 5, 2007

Decided June 22, 2007

RYAN, J., delivered the opinion of the Court, in which EFFRON, C.J., and BAKER, ERDMANN, and STUCKY, JJ., joined.


<u>Counsel</u>

For Appellant:  Major Brian K. Keller, USMC (argued); Commander P .C. LeBlanc, JAGC, USN, and Colonel R. F. Miller, USMC (on brief).


For Appellee:  Captain S. Babu Kaza, USMC (argued).

Military Judges:  A. W. Keller and T. A. Daley (arraignment)


**THIS OPINION IS SUBJECT TO REVISION BEFORE FINAL PUBLICATION.**

United States v. Cabrera-Frattini, No. 07-5001/MC

Judge RYAN delivered the opinion of the Court.

In Crawford v. Washington, the Supreme Court held that "[t]estimonial statements of witnesses absent from trial" are admissible "only where the declarant is unavailable, and only where the defendant has had a prior opportunity to cross-examine [the witness]." 541 U.S. 36, 59 (2004). We are asked in this case to determine whether the military judge abused his discretion by finding a thirteen-year-old witness suffering from bipolar disorder and post-traumatic stress syndrome unavailable for Confrontation Clause purposes based on the witness's medical records and the testimony of a board-certified child psychiatrist that testifying would be detrimental to the witness's mental and physical health, including possible suicide at both the time of trial and the foreseeable future. We hold that the military judge did not abuse his discretion by ruling that the witness was unavailable.

A general court-martial, composed of officer and enlisted members, convicted Appellee, contrary to his pleas, of carnal knowledge and committing an indecent act with a minor in violation of Articles 120 and 134, Uniform Code of Military Justice (UCMJ), 10 U.S.C. §§ 920, 934 (2000). The sentence adjudged by the court-martial and approved by the convening authority included forfeiture of all pay and allowances, reduction to the lowest enlisted grade, confinement for three

years, and a dishonorable discharge.  The United States Navy-Marine Corps Court of Criminal Appeals set aside the findings and sentence, holding that the military judge erred by determining that the witness was unavailable and admitting her videotaped deposition, in violation of Appellee's Sixth Amendment right to confrontation.  United States v. Cabrera-Frattini, No. NMCCA 200201665, 2006 CCA LEXIS 218, at *1 (N-M. Ct. Crim. App. Aug. 2, 2006)(unpublished).  Chief Judge Rolph, in dissent, concluded that the military judge had not erred. Id. at *32-*68.

Pursuant to Article 67(a)(2), UCMJ, 10 U.S.C. § 867 (a)(2) (2000), the Judge Advocate General of the Navy certified to this Court this issue:

> WHETHER THE NAVY-MARINE CORPS COURT OF CRIMINAL APPEALS ERRONEOUSLY HELD THAT THE MILITARY JUDGE ABUSED HIS DISCRETION BY FINDING THE 13-YEAR-OLD WITNESS UNAVAILABLE ON THE BASIS OF MENTAL ILLNESS OR INFIRMITY, AND THUS THAT THE MILITARY JUDGE HAD ERRONEOUSLY ADMITTED THE WITNESS'S VIDEOTAPED DEPOSITION.

## A. Background

### 1.  TO's deposition

The charges referred against Appellee arise from sexual intercourse he had with TO while another Marine anally sodomized her.  TO, then a twelve-year-old girl, is unrelated to Appellee.

In October 2001, the military judge ordered the deposition of TO so that Appellee would not be denied the opportunity to

cross-examine a key Government witness under oath prior to trial.[1]

TO was deposed on November 13, 2001.  The deposition was videotaped in accordance with R.C.M. 702(g)(3).  TO gave her testimony under oath and in Appellee's presence.  Appellee's military counsel conducted a full cross-examination of TO without limitation.[2]  This post-referral deposition was taken in full contemplation of the charged offenses referred to general court-martial.

2.  Prosecution subpoenas and attempts to obtain TO for trial

Trial was scheduled to begin on December 10, 2001.  Trial counsel subpoenaed TO and her mother to appear, issued travel orders, and made arrangements for them to fly from St. Louis, Missouri, to Parris Island, South Carolina.

---

[1] TO had moved to another state, and was unavailable at Appellee's Article 32, UCMJ, 10 U.S.C. § 832 (2000), investigation.  Appellee sought to depose TO so that he could cross-examine her to "ask her those hard questions and get them on the record."  The military judge ordered the deposition, but denied Appellee's motion for a new Article 32, UCMJ, investigation.  He found the existing investigation in substantial compliance with Rule for Courts-Martial (R.C.M.) 405(a).  The military judge instead ordered the Article 32, UCMJ, investigation reopened for the sole purpose of considering TO's deposition.  After considering TO's deposition, the investigating officer again recommended a general court-martial.
[2] The Navy Marine Corps Court of Criminal Appeals noted:  "There is no dispute that the deposition was properly ordered and conducted, and that appellant had ample and full opportunity to cross-examine TO, with a view toward the deposition's possible later use at trial."  Cabrera-Frattini, 2006 CCA LEXIS 218, at *13.  This portion of the decision was not appealed.

### 3. TO's hospitalization

Shortly after her deposition, TO attempted suicide. On December 4, 2001, she was admitted to a psychiatric hospital in St. Louis, Missouri, because she was a severe danger to herself. Upon admission, TO was preoccupied with suicidal thoughts.

Dr. Linda Bock, a psychiatrist who specializes in child and adolescent psychiatry, initiated in-patient psychiatric treatment of TO's "significant psychiatric problems."

### 4. TO's absence from trial

On December 7, trial counsel received a faxed letter from TO's treating physician, Dr. Bock, which informed trial counsel that TO was hospitalized for in-patient psychiatric evaluation and treatment in St. Louis, Missouri, because TO was a "severe danger to herself." The letter stated TO was having "significant psychiatric problems" and was being treated with medications, but having "medication adjustment reactions." It further stated she could not attend court before the end of December 2001 and that her date of discharge from the hospital was unknown.

### 5. The military judge's inquiry

On December 10, 2001, Appellee's counsel filed a motion in limine to exclude TO's videotaped deposition testimony. Several hearings on the motion were held at which the Government offered documentary evidence to explain TO's hospitalization and ongoing

medical condition as the reason for her unavailability for trial.

The military judge required more.  Consequently, pursuant to the military judge's order, the trial counsel produced Dr. Bock for an Article 39(a), UCMJ, 10 U.S.C. § 839(a) (2000), session on January 22, 2002.  Dr. Bock appeared before the military judge to address TO's medical and psychiatric condition.  Without objection, Dr. Bock established her credentials and expertise as a board-certified child psychiatrist and practicing psychiatric analyst with more than twenty years of experience.[3]

In addition to her curriculum vitae, Dr. Bock presented eighty-eight pages of TO's medical and psychiatric treatment records.  In her sworn testimony, Dr. Bock reiterated the diagnosis she had previously documented in TO's medical records.  She described bipolar disorder as a mood disorder that caused TO to suffer disturbed, erratic behavior.  She explained that TO suffered from bipolar II disorder, rapid cycling and post-traumatic stress disorder, as defined by criteria set forth in

---

[3] Dr. Bock's curriculum vitae reflected an internship in pediatrics, a residency in psychiatry, and a fellowship in child and adolescent psychiatry.  She served in numerous consulting and teaching positions relating to her profession, published extensively in her field, and was a member and/or director of multiple professional organizations related to the treatment of psychiatric disorders.

the Diagnostic and Statistical Manual of Mental Disorders (DSM-IV) (4th ed. 1994).

Dr. Bock testified that TO's mental condition deteriorated significantly after TO gave her deposition. As evidence, Dr. Bock cited TO's suicide attempt. Its gravity was magnified by the fact that it was her second attempt. In her sessions with Dr. Bock, TO focused on the issue of testifying at the trial as one of the reasons that she could not go on living, believing it would be better to be dead than to testify. TO's condition required Dr. Bock to administer antipsychotic and mood-stabilizer medications to treat her disorders. Dr. Bock and other practitioners treated TO in the hospital for almost a week. Dr. Bock discharged TO on December 10, 2001.

Dr. Bock described TO's prognosis upon release from hospitalization as "guarded," noting that TO had "a serious chronic psychiatric disorder." She did not expect TO's mood to begin to show signs of stabilizing for at least six to twelve months due to her illness, as that was the time needed for the antipsychotic and mood-stabilizing drugs to have an appreciable effect. Dr. Bock expected a difficult recovery period with a possibility of re-hospitalization. Dr. Bock concluded that it would be detrimental for TO to testify as a witness based upon TO's demonstrated psychological abnormalities before and during hospitalization.

On cross-examination, Dr. Bock reiterated her medical conclusion that TO could not testify because it would aggravate TO's bipolar disorder. She testified that TO was on the verge of psychotic mania during her hospitalization. She stated that she had prescribed medications to get TO's stress levels down and that, while testifying out of the sight of the members might be less stressful, it still would detrimentally increase brain stimulation.

In response to the military judge's questions, Dr. Bock testified that TO's mental illness was ongoing and its treatment would be long-term and protracted. She told the military judge that testifying would be a major, over-stimulating event for TO, which could predictably result in a repeat suicide attempt or a repeat psychiatric hospitalization.

Dr. Bock further testified on both direct and cross-examination that TO would not be able to talk about what happened to her until TO, who was then thirteen, was eighteen to twenty-five, and perhaps not even then.

At the time of this hearing, a month and a half had passed since Dr. Bock had seen TO. Dr. Bock addressed the current accuracy of her prognosis, stating there was no other data that would be pertinent to change her view.

6.   The military judge's findings of fact

Based upon Dr. Bock's testimony and the medical record evidence, the military judge found that TO had two significant psychiatric illnesses:  bipolar II disorder and post-traumatic stress disorder.  He found that she was being treated with Seroquel, a brain protectant and antipsychotic, and Tegretol, a mood stabilizer.  As a result, he found that it "would be detrimental to [TO]'s mental and physical health now and in the foreseeable future to testify at the court-martial or any hearing regarding the charges before the court . . . ."  He concluded that "any court appearance would re-traumatize [TO] and would worsen her mental and physical health to include her possible suicide."

Moreover, he found that TO "had first-hand knowledge of the material facts in her deposition[,] . . . appreciated the moral duty to tell the truth[,] . . . was reluctant to testify against the accused[,] . . . [and] lacked a motive to fabricate having consensual sexual intercourse with the accused."

7.   The military judge's conclusion of law

The military judge concluded TO was unavailable and admitted TO's videotaped deposition.  The military judge ruled that the prosecution had established the requirement of unavailability for purposes of both the Sixth Amendment and

Military Rule of Evidence (M.R.E.) 804.[4] He concluded the government had made a reasonable and good-faith effort to obtain TO's presence.

Appellee's counsel did not introduce contradictory expert testimony, ask to perform his own psychiatric assessment of TO, or request a continuance.

Based on TO's videotaped deposition and the other evidence presented at trial, Appellee was convicted.

### B.  Discussion

The Confrontation Clause of the Sixth Amendment provides that "[i]n all criminal prosecutions, the accused shall enjoy the right . . . to be confronted with the witnesses against him."  U.S. Const. amend VI.  The Supreme Court recently decided that, before "testimonial" statements may be admitted, the Confrontation Clause requires that the accused have been afforded a prior opportunity to cross-examine the witness, and that the witness be unavailable.  Crawford, 541 U.S. at 53-54.

The military judge decided this case prior to the Supreme Court's decision in Crawford.  At that time, the admissibility of out-of-court statements under the Confrontation Clause was controlled by Ohio v. Roberts, 448 U.S. 56 (1980).  Crawford applies to criminal cases, such as this one, that are still

---

[4] As we respond only to the certified issue relating to unavailability, we will not address the other findings of the military judge related to the admissibility of the deposition.

United States v. Cabrera-Frattini, No. 07-5001/MC

pending on direct review.  See Griffith v. Kentucky, 479 U.S

314, 328 (1987) (holding "a new rule for the conduct of criminal

prosecutions is to be applied retroactively to all cases . . .

pending on review"); see also Whorton v. Bockting, 127 S. Ct.

1173, 1181 (2007) (declaring Crawford to be a new rule of law).

Crawford did not purport to change the test of witness

"unavailability."  Crawford, 541 U.S. at 53-54.

### 1.  Legal framework

It has been the rule in this Court for more than twenty

years that a military judge's determination of a witness's

unavailability (and the antecedent question of the government's

good-faith efforts) is reviewed for abuse of discretion.  United

States v. Cokeley, 22 M.J. 225, 229 (C.M.A. 1986).  "Findings of

fact are affirmed unless they are clearly erroneous; conclusions

of law are reviewed de novo."  United States v. Rader, 65 M.J.

30, 32 (C.A.A.F. 2007).  So long as the military judge

understood and applied the correct law, and the factual findings

are not clearly erroneous, neither the military judge's decision

to admit evidence, nor his unavailability ruling, should be

overturned.  United States v. McDonald, 59 M.J. 426, 430

(C.A.A.F. 2004) (citations omitted).

In order for a witness to be "unavailable" for Sixth

Amendment purposes, the government must first make a "good

faith" effort to secure the witness's presence at trial.  Barber

v. Page, 390 U.S. 719, 724-25 (1968). In Roberts, the Supreme Court held that the lengths to which the prosecution must go to produce a witness is determined under a reasonableness standard. 448 U.S. at 74. "[E]valuation of reasonableness or good-faith effort 'requires us to consider all the circumstances rather than to apply a per se rule.'" Cook v. McKune, 323 F.3d 825, 835 (10th Cir. 2003) (quoting Martinez v. Sullivan, 881 F.2d 921, 924 n.1 (10th Cir. 1989)). See also Cokeley, 22 M.J. at 229 (recognizing that "there is no bright-line rule which will fit every situation," and that the "judge must carefully weigh all facts and circumstances of the case, keeping in mind the preference for live testimony."). The test for unavailability focuses on "whether the witness is not present in court in spite of good-faith efforts by the Government to locate and present the witness." Cokeley, 22 M.J. at 228.

Courts are not without guidance in undertaking this fact- and circumstance-driven inquiry. This Court has addressed some factors that should be considered to determine unavailability, including "the importance of the testimony, the amount of delay necessary to obtain the in-court testimony, the trustworthiness of the alternative to live testimony, the nature and extent of earlier cross-examination, the prompt administration of justice, and any special circumstances militating for or against delay." Id. Where the absence of the witness results from illness, a

court should also consider the nature of the illness and the probable duration of the illness. See United States v. Faison, 679 F.2d 292, 297 (3d Cir. 1982).

## 2. Analysis

"When reviewing a decision of a Court of Criminal Appeals on a military judge's ruling, 'we typically have pierced through that intermediate level' and examined the military judge's ruling, then decided whether the Court of Criminal Appeals was right or wrong in its examination of the military judge's ruling." United States v. Shelton, 64 M.J. 32, 37 (C.A.A.F. 2006) (quoting United States v. Siroky, 44 M.J. 394, 399 (C.A.A.F. 1996)). The sole issue before us is whether the lower court erred in reversing the military judge's ruling that TO was unavailable for purposes of the Sixth Amendment. We conclude that it did.

The military judge's ruling on the motion in limine identifies the appropriate framework for legal analysis for an unavailability determination and addresses the relevant Cokeley and Faison factors, in the context of undisputed factual

findings.[5]  Those factual findings are not clearly erroneous, and

we accept them as the factual predicate for our decision.

The military judge's good faith/unavailability findings

included the following:  (a)the government subpoenaed TO and her

mother, issued their travel orders and made arrangements to fly

them to Parris Island; (b) TO's hospitalization prevented her

from complying with the subpoena; (c) TO had two significant

psychiatric illnesses -- bipolar II disorder and post-traumatic

stress disorder; (d) TO was taking Seroquel, a brain protectant

and antipsychotic drug, and Tegretol, a mood stabilizer; (e) it

"would be detrimental to TO's mental and physical health now and

in the foreseeable future to testify at this court-martial or

any hearing regarding the charges that were before the court";

and (f) "[a]ny court appearance would re-traumatize [TO] and

would worsen her mental and physical health to include her

possible suicide" (emphasis added).

In this case, the military judge did not abuse his

discretion by concluding that the Government exercised good

faith efforts under the circumstances to produce TO at trial and

that she was, nonetheless, unavailable.  As both the majority

and dissent below recognize, "[t]here is ample precedent for

---

[5] Cokeley, of course, was decided in the context of a military
judge's denial of a defense request for a continuance.  There
was no such request in this case.

finding a witness, even a critical one, unavailable where the act of testifying in court is determined to be detrimental to the witness's physical or mental well-being." Cabrera-Frattini, 2006 CCA LEXIS 218, at *13-*14 (citing United State v. Keithan, 751 F.2d 9, 12-13 (1st Cir. 1984) (finding unavailability in case of an elderly witness whose infirmity prevented travel); Howard v. Sigler, 454 F.2d 115, 120-21 (8th Cir. 1972) (upholding unavailability determination where tuberculosis prevented travel, even though witness might recover some day)); accord Cabrera-Frattini, 2006 CCA LEXIS 218, at *53 (Rolph, C.J., dissenting) (citing United States v. Donaldson, 978 F.2d 381, 393 (7th Cir. 1992) (affirming unavailability determination of pregnant female admitted to hospital on the eve of trial)); see also Ecker v. Scott, 69 F.3d 69, 70-73 (5th Cir. 1995) (finding unavailability where there was a fifty-percent chance the witness would still be unavailable after three to four weeks); Conley v. McKune, 2004 U.S. Dist LEXIS 26315, at *18-*19 (D. Kan. 2000) (finding unavailability as a result of a witness's medical condition and not as a result of the prosecution's lack of reasonable diligence); Warren v. United States, 436 A.2d 821, 827-28 (D.C. 1981) (affirming a finding of unavailability where there was a high likelihood of temporary or permanent psychological injury). And this Court's precedent

reaffirms that "[u]navailability is clear when the witness is not expected to improve." Cokeley, 22 M.J. at 229.

Expert testimony supported the military judge's finding that TO suffered from severe psychiatric illness that would make testifying at trial or any hearing "now and in the foreseeable future" detrimental to TO's mental and physical health.[6] Under the facts of this case, "detrimental" included the possible suicide of TO.

The military judge's analysis and rulings reflect that he understood that Confrontation Clause considerations are most consequential "when the testimony of a witness is critical to the prosecution's case against the defendant." United States v. Quinn, 901 F.2d 522, 529 (6th Cir. 1990) (quoting United States v. Lynch, 499 F.2d 1011, 1022 (D.C. Cir. 1974)). Contrary to Appellee's assertion, the actions of the military judge in this case are dissimilar from those at issue in Cokeley, 22 M.J. at 229 (finding military judge abused his discretion based on misapprehension of the applicable law and a failure to

---

[6] We note that a continuance was not requested and, in any event, "is not necessary in every case where a witness is ill but may recover someday." Cokeley, 22 M.J. at 229. Given the testimony about the protracted nature of TO's psychiatric illness, the benefit of a continuance is speculative, at best. See also United States v. Crockett, 21 M.J. 423, 427-28 (C.M.A. 1986) (affirming finding of unavailability where videotaped deposed witnesses were in Florida and unwilling to travel to Germany for trial).

16

articulate the relevant factors on the record) and Burns v. Clusen, 798 F.2d 931, 942 (7th Cir. 1986) (concluding that the factual findings were not supported by the record).  In this case, the military judge not only entered detailed findings of fact and conclusions of law, he also required the prosecution to carry its burden of demonstrating "unavailability" before the witness's out-of-court statement was admitted.[7]  See Roberts, 448 U.S. at 74-75; Cokeley, 22 M.J. at 229.

The lower court held that the military judge erred by finding TO unavailable based solely on the evidence presented by the Government.  The question that divided the lower court was whether the trial judge took sufficient steps to determine that TO was unavailable for trial.  The majority concluded that the military judge should have required more, such as an updated prognosis, an independent medical opinion from a court-appointed expert, a recent letter from TO or her mother, or explicit exploration of the alternative of remote testimony.  There could be a case where the alternative steps proposed by the lower court might be warranted.  But in this case, Dr. Bock

---

[7] We note that the military judge required, over the Government's objection, that Government counsel call Dr. Bock to testify in order to demonstrate unavailability.  But for the military judge's insistence on this additional evidence, it is questionable that the Government would have met its burden of proof regarding the unavailability of a key Government witness by assuming it needed to put forward only the faxed letters initially offered.

established both that TO was suffering from a serious mental illness that would likely demand years of medication and therapy to control, and that the risk of suicide was ongoing and would be exacerbated by testifying in any forum in the foreseeable future.

While Dr. Bock's testimony was presented to the trial judge forty-four days after her examination, Dr. Bock addressed the current accuracy of her prognosis, stating there was no other data that would be pertinent to change her view. We agree with Chief Judge Rolph that Dr. Bock's diagnosis was not stale. Cabrera-Frattini, 2006 CCA LEXIS 218, at *57-*59 (Rolph, C.J., dissenting).

The military judge found that it would cause TO harm "now and in the foreseeable future" to testify "at this court martial or any hearing regarding the charges before the court." In light of this finding, exploring the option of remote live testimony was not indicated.

The lower court did not hold that the military judge's findings of fact were clearly erroneous or unsupported by the record. And it did "not quibble with the qualifications of Dr. Bock's or her diagnosis that TO was suffering from a serious mental illness in December 2001 that would likely demand years of medication and therapy to control." Cabrera-Frattini, 2006 CCA LEXIS 218, at *22. Rather, it noted that Dr. Bock's opinion

was "based on considerable medical acumen and reliable statistics . . . ." Id. at *23.

Appellee has not identified precedent requiring a second medical opinion upon a trial court finding that a mental or physical illness could be exacerbated, with potentially life-threatening consequences, by a court appearance. Nor are we aware of a rule requiring courts to investigate independently the established medical condition of an unavailable witness, absent defendant's request for an examination. See Alcala v. Woodford, 334 F.3d 862, 880-81 (9th Cir. 2003) (holding courts have no duty to investigate, sua sponte, the medical condition of an alleged unavailable witness); Warren, 436 A.2d at 830 (finding no responsibility on the part of court to request, sua sponte, an updated report of psychological health, relying instead on "a reasonable presumption of continuing mental condition").

We decline to hold that while non-amenability and refusal of a witness to voluntarily appear can establish constitutional unavailability, a life-threatening illness can not. See Mancusi v. Stubbs, 408 U.S. 204, 212 (1972) (holding witness unavailable because state was powerless to compel witness's attendance at trial); Crockett, 21 M.J. at 427-28 (reasoning that witnesses in Florida were unavailable because they could not be compelled against their will to testify in Germany).

Under the particular facts of this case, we hold that the military judge did not abuse his discretion by concluding that the Government made good faith efforts to procure the witness's presence for trial, concluding that TO was unavailable, and admitting TO's videotaped deposition testimony.[8]

### 3. Decision

We answer the certified question in the affirmative. The decision of the United States Navy-Marine Corps Court of Criminal Appeals is set aside. The record of trial is returned to the Judge Advocate General of the Navy for remand to that court for further review in accordance with Article 66, UCMJ, 10 U.S.C. § 866 (2000).

---

[8] Concluding that TO was unavailable under the Confrontation Clause, we also are satisfied that the military judge did not abuse his discretion in finding TO unavailable under M.R.E. 804(a)(4).