# UNITED STATES ARMY COURT OF CRIMINAL APPEALS

Before
COOK, CAMPANELLA, and HAIGHT
Appellate Military Judges

**UNITED STATES, Appellant**
**v.**
**Specialist ROBERT J. TRANK**
**United States Army, Appellee**

ARMY MISC 20130742

Headquarters, 25th Infantry Division
David L. Conn, Military Judge
Colonel Mark A. Bridges, Staff Judge Advocate

For Appellee: Colonel Kevin Boyle, JA; Major Jacob D. Bashore, JA; Major Amy E. Nieman, JA (on brief).

For Appellant: Colonel John P. Carrell, JA; Lieutenant Colonel James L. Varley, JA; Major Kenneth W. Borgnino, JA (on brief).

19 November 2013

---------------------------------------------------------------------------
MEMORANDUM OPINION AND ACTION ON APPEAL
BY THE UNITED STATES FILED PURSUANT TO
ARTICLE 62, UNIFORM CODE OF MILITARY JUSTICE
---------------------------------------------------------------------------

*This opinion is issued as an unpublished opinion and, as such, does not serve as precedent.*

CAMPANELLA, Judge:

Appellee is charged with one specification of aggravated sexual assault, one specification of aggravated sexual contact, and one specification of lewd acts, all with a child between the ages of 12 and 16 years of age, in violation of Article 120, Uniform Code of Military Justice 10, U.S.C. § 920 (2006 & Supp. III) [hereinafter UCMJ]. This case is before this court pursuant to a government appeal of the military judge's ruling in accordance with Article 62, UCMJ, and Rule for Courts-Martial 908(a).

The alleged child victim in this case, (ST), provided sworn testimony at appellee's Article 32, UCMJ, investigative hearing [hereinafter Article 32 hearing]. ST subsequently obtained legal representation and invoked her right against self-

incrimination at an Article 39(a), UCMJ, session the military judge held several months later. At that time, she also refused to cooperate further without first being granted transactional immunity, despite already being provided testimonial immunity.

The government subsequently moved to have ST declared unavailable and to allow her Article 32 hearing testimony to be admitted into evidence at appellee's court-martial.[1] The military judge determined ST was "unavailable" for purposes of Military Rule of Evidence 804(b)(1), but then found that the defense did not have a "similar motive" to cross-examine ST at the Article 32 hearing as they would have at the court-martial due to her subsequent proffered recantation. It was upon this second basis that the military judge determined ST's Article 32 hearing testimony could not be used as a substitute for her testimony at the court-martial.

As discussed below, we find that the defense had not only the opportunity to cross-examine ST, but also possessed a similar motive at the Article 32 hearing to develop ST's testimony during cross-examination as they would at a court-martial. We find that the military judge abused his discretion in denying the government's motion to admit the ST's Article 32 hearing testimony. We, therefore, reverse the military judge's decision to deny the admission of ST's Article 32 hearing testimony and remand for further action in accordance with this ruling.

## BACKGROUND

On 1 November 2012, while appellee was deployed to Afghanistan, ST alleged in a note to her mother that her stepfather (appellee), had "touched [her] inappropriately" and that it had been occurring for "a while." She wrote that she was depressed and she did not want to tell her mother because she wanted her mother to be happy. ST concluded by asserting, "If you don't believe me, it['s] fine but either way, I can't stay here." At the time of the alleged offenses, ST was thirteen and fourteen years old.

---

[1] In accordance with Mil. R. Evid. 804(b)(1), the government moved to admit a "transcript" of ST's Article 32 hearing testimony. Although its motion in limine did not expressly designate ST's testimony as a "verbatim record" of the hearing as required by the rule, the government provided this court with a typewritten copy that purports to be a verbatim transcript, and the military judge's findings and conclusions were based on this presumption as well. Our decision is conditioned upon the availability and introduction of a verbatim transcript of ST's Article 32 hearing testimony.

On 2 November 2012, in response to her daughter's assertion regarding her stepfather, ST's mother confronted appellee via video-teleconference (Skype), in the presence of ST. Appellee denied the allegations and suggested ST had concocted the allegations in an effort to return to Alabama.

On 2 November 2012, ST confided in her friend, JT, via text-message, that appellee had touched her inappropriately and that she was depressed. ST also wrote that she had told her mother about appellee touching her inappropriately. JT, in turn, told her mother who then contacted the military police. ST previously told at least two other friends on previous occasions that appellee had been touching her inappropriately.

On 3 November 2012, Army criminal investigators opened a criminal investigation into the allegations and interviewed ST and her mother. In a sworn statement, ST generally alleged appellee had, on divers occasions in 2011, touched her inappropriately. ST specifically alleged that shortly after the family moved to Hawaii in 2011, appellee began entering her bedroom once or twice a week at around 0530 in the morning, ostensibly to wake her up. Sometimes he would sit on the edge of the bed, while other times he would lie down next to her. During these occasions, appellee allegedly touched ST's vagina both over and inside her panties. She alleged that on at least three occasions he placed his finger inside her vagina. ST also alleged appellee touched her buttocks and breasts. The incidents continued for about a year until shortly before appellee deployed in 2012. In her sworn statement to investigators, ST stated she was scared appellee would "take it too far" by "putting his penis into [her] vagina."

ST's mother, in an interview with Army criminal investigators on 3 November 2012, expressed some reservations about whether or not ST was telling the truth. She indicated the allegations may be a way for ST to return to Alabama.

On 20 February 2013, charges were preferred against the appellee.

On 5 April 2013, ST testified at appellee's Article 32 hearing, consistent with her sworn statement to criminal investigators. At the Article 32 hearing, the defense had the opportunity to cross-examine ST and did so regarding many matters such as ST's possible bias and possible motive to fabricate.

On 2 May 2013, the convening authority referred the case to a general court-martial and the case was docketed for trial.

On 22 May 2013, appellee was arraigned and the military judge set the court-martial date for 22-24 July 2013.

On 21 June 2013, the trial counsel received a phone call from a lawyer who had been retained by ST's mother to represent ST. The lawyer stated that ST would recant if called to testify and she no longer wished to testify. He further stated that under advice of counsel, ST would invoke her right against self-incrimination if called to testify.

In an effort to facilitate obtaining ST's further cooperation and testimony, the government sought a grant of testimonial immunity from the Assistant United States Attorney in Hawaii. On 17 July 2013, the government's request was granted by the Department of Justice. The government also attempted to obtain testimonial immunity from the state of Hawaii, but it declined and provided the government with case law to indicate the probability of prosecution was extremely remote given judicial precedent.

On 24 July 2013, the military judge held an Article 39(a), UCMJ, session to resolve the issue related to ST's further testimonial cooperation. At this session, ST was questioned by the military judge and government counsel, and refused to answer any questions related to the substantive sexual allegations she had previously lodged against appellee. ST also indicated she would invoke her right against self-incrimination regarding the allegations if called to testify and she would refuse to follow the military judge's order to testify, unless the testimonial immunity was broadened to transactional immunity. Her legal counsel further explained ST's position, *proffering that ST would make statements inconsistent with her previous statements* if she were to testify and he reiterated that absent transactional immunity to fully protect her from possible prosecution, ST would invoke her right against self-incrimination.

During the Article 39(a) session, the government asserted that it had tried and failed in obtaining transactional immunity from the State of Hawaii and that it did not intend to seek such a grant from the Department of Justice.

The government moved to have ST declared unavailable under Military Rule of Evidence [hereinafter Mil. R. Evid.] 804 due to her refusal to testify and to admit her Article 32 hearing testimony as a substitute for her appearance at appellee's court-martial.

The military judge considered both government and defense written briefs and issued findings of fact and conclusions of law on 22 August 2013. The military judge determined that ST was "unavailable" within the meaning of Mil. R. Evid. 804, but that the government had failed to meet its burden to show that the defense had a sufficiently "similar motive" to cross-examine ST at the Article 32 hearing as they did after the subsequent "recantation" proffered by her legal counsel. The military judge, therefore, decided ST's Article 32 hearing testimony could not be used as a substitute for her appearance at the court-martial.

**MILITARY JUDGE'S FINDINGS OF FACT AND CONCLUSIONS OF LAW**

In making his findings of fact, the military judge found as follows:

Subsequent to the referral of charges, ST retained legal counsel. ST's legal counsel advised the government that ST "had recanted her earlier allegations and testimony and would invoke her 5th Amendment privilege against self-incrimination." The government obtained testimonial immunity from the Department of Justice, but not from the State of Hawaii. Hawaii provided judicial precedent reflecting that immunity was not necessary and the likelihood of prosecution was extremely remote.

ST appeared at an Article 39(a) session and invoked her right against self-incrimination regarding her anticipated testimony and refused to obey the military judge's order to testify absent an extension of testimonial immunity to transactional immunity.

ST's legal counsel reiterated that ST would continue to refuse to provide substantive testimony regarding the allegations and not comply with the court's order to testify absent a grant of [transactional] immunity.[2]

In stating his conclusions of law the military judge wrote:

> The similar motive requirement considers the similarity of the underlying issues and the context of the questioning . . . [at the] Article 32 [hearing], the Defense had no basis to seek to impeach [ST] on her recantation, and will not be able to confront her on this recantation if the Government were permitted to offer such evidence in the form of her Article 32 [hearing] testimony at trial.

He further concluded:

> The substance of the Defense Counsel's cross-examination would be fundamentally different at trial and the necessity of confrontation on issues not in existence at the time of the Article 32 [hearing] would be paramount. I conclude

---

[2] The military judge apparently mistakenly wrote "grant of testimonial immunity" in his written decision but it is clear from the context and content of the Article 39(a), UCMJ, hearing transcript and the briefs that the military judge meant "transactional immunity."

> that the Government failed to bear its burden to
> demonstrate a "similar motive" to cross-examine [ST].

The government appealed the military judge's ruling pursuant to R.C.M. 908 and Article 62, UCMJ.

## STANDARD OF REVIEW

A military judge's decision to exclude or suppress evidence is reviewed for an abuse of discretion. *United States v. Wuterich*, 67 M.J. 63, 77 (C.A.A.F. 2008); *United States v. Baker*, 70 M.J. 283, 287 (C.A.A.F. 2011). We will reverse for an abuse of discretion if the military judge's findings of fact are clearly erroneous or if his decision is influenced by an erroneous view of the law. *United States v. Owens,* 51 M.J. 204, 209 (C.A.A.F. 1999). Moreover, when reviewing matters under Article 62(b), UCMJ, we "will take action only with respect to matters of law," and we are "bound by the military judge's factual determinations unless they are unsupported by the record or clearly erroneous." R.C.M. 908(c)(2); *United States v. Gore*, 60 M.J. 178, 185 (C.A.A.F. 2004). "On a mixed question of law and fact . . . a military judge abuses his discretion if his findings of fact are clearly erroneous or his conclusions of law are incorrect." *Baker,* 70 M.J. at 287 (quoting *United States v. Ayala*, 43 M.J. 296, 298 (C.A.A.F 1995)).

## LAW

At its core, the simple question posed by this government appeal is whether the motive to cross-examine a complaining witness is changed somehow by an indication that the witness may desire to recant. We find the motive does not change. While cross-examination of a witness is likely easier when that witness has provided a prior inconsistent statement, the appellee's motive to cast doubt upon the victim's story remains the same.

The Confrontation Clause of the Sixth Amendment provides that "[i]n all criminal prosecutions, the accused shall enjoy the right . . . to be confronted with the witnesses against him." U.S. Const. amend. VI. The Supreme Court has decided that before the prosecution may introduce "testimonial" out-of-court statements into evidence against an accused, the Confrontation Clause requires that the witness who made the statement be unavailable, and that the accused have had a prior opportunity to cross-examine the witness. [3] *Crawford v. Washington*, 541 U.S. 36, 53–54 (2004).

---

[3] "In order for a witness to be 'unavailable' for Sixth Amendment purposes, the government must first make a 'good faith' effort to secure the witness's presence at trial. . . . [T]he lengths to which the prosecution must go to produce a witness is

(continued . . .)

"An important function of this constitutionally protected right is to provide the defense an opportunity to expose the possible interests, motives, and biases of prosecution witnesses." *United States v. Carruthers*, 64 M.J. 340, 341 (C.A.A.F. 2007).

The United States can compel testimony from an unwilling witness who invokes the Fifth Amendment privilege against compulsory self-incrimination by conferring testimonial immunity, as provided by 18 U.S.C. § 6002 (2012). The compelled testimony and evidence derived therefrom is not admissible in subsequent criminal proceedings against the immunized party, and this immunity is sufficient to compel testimony over a claim of the privilege. "Transactional immunity" would afford broader protection than the Fifth Amendment privilege, but is not constitutionally required. *Kastigar v. United States*, 406 U.S. 441, 453 (1972).

Regarding hearsay statements, the Military Rules of Evidence, like their Federal counterpart, flow from the Sixth Amendment and generally prohibit the use of hearsay evidence. Military Rule of Evidence 804(b)(1) provides that verbatim Article 32 hearing testimony is admissible when "the party against whom the former testimony is now offered had an opportunity and similar motive to develop the testimony by direct, cross, or redirect examination." The "similar motive" requirement is satisfied if counsel had the opportunity to cross-examine the witness without restriction on the scope of the examination even if counsel subsequently discovers information which was not available at the Article 32 hearing. *United States v. Connor*, 27 M.J. 378, 389 (C.M.A. 1989).

> . . . [The] admissibility of the former testimony is not impaired by lack of an opportunity to cross-examine the witness about matters of which the defense has subsequently acquired knowledge, so long as it reasonably can be concluded that the motive for cross-examination at the pretrial hearing was "similar" to that which would have existed if the witness had appeared at trial. In short, "opportunity" to cross-examine does not mean that the cross-examiner have at his disposal all the materials which he might desire.

*Id.* at 391 (citing *Pennsylvania v. Ritchie*, 480 U.S. 39 (1987)).

---

(. . . continued)
determined under a reasonableness standard. . . . The test for unavailability focuses on 'whether the witness is not present in court despite good-faith' efforts by the government to locate and present the witness." *United States v. Cabrera-Frattini*, 65 M.J. 241, 245 (C.A.A.F. 2007) (citations omitted).

In *United States v. Salerno*, the Supreme Court held that a party has no right to introduce former testimony under Federal Rule of Evidence 804 without showing similar motive. 505 U.S. 317, 322 (1992). "Because 'similar motive' does not mean 'identical motive,' the similar-motive inquiry . . . is inherently a *factual inquiry*, depending in part on the similarity of the underlying issues and on the context of the . . . questioning." *Id*. at 326 (Blackmun, J., concurring) (emphasis in original). Further, "the Confrontation Clause guarantees only 'an opportunity for effective cross-examination, not cross-examination that is effective in whatever way, and to whatever extent, the defense might wish.'" *United States v. Rhodes*, 61 M.J. 445, 449 (C.A.A.F. 2005) (quoting *United States v. Owens*, 484 U.S. 554, 559 (1988)).

## ANALYSIS

Reviewing the military judge's conclusions of law de novo, we find he abused his discretion in determining that the government failed to meets its burden to show "similar motive" to cross-examine ST at the time of the Article 32 hearing. We further find the military judge based his conclusions of law on clearly erroneous findings of fact.

The government demonstrated a good faith effort to make ST available for appellee's court-martial. After the government was informed by ST's legal counsel that ST would not testify at appellee's court-martial without immunity, the government sought and obtained testimonial immunity from the Department of Justice to overcome the victim's privilege against self-incrimination. The defense's assertion that the government need only obtain transactional immunity to make the witness available fails in light of the holding in *Kastigar*, 406 U.S. 441, 453. The government is not required to seek transactional immunity to demonstrate a good faith effort. By obtaining testimonial immunity, the government provided the constitutionally required protection provided by the Fifth Amendment. *Id.* We agree with the military judge's ruling that ST was "unavailable" pursuant to Mil. R. Evid. 804.

Once declared unavailable in accordance with Mil. R. Evid. 804, former verbatim testimony given as a witness at an Article 32 hearing may be used against a party who had a similar motive and opportunity to develop the testimony at that hearing by cross-examination. In a case where a motive exists to dispute a victim's account of information and a victim's credibility is the central issue in the case, it would be significant to the defense to demonstrate the implausibility or unbelievability of the victim's testimony. In this case, the defense's motive to develop ST's testimony at the Article 32 hearing is not just similar, it is the same as it would be at a court-martial. The defense's motive to cross-examine ST's testimony was to attack ST's credibility, to examine ST for possible bias, to find motive to fabricate, and to deconstruct and analyze any inconsistencies in her allegations. The opportunity to develop this motive is exhibited by the defense in

their probing cross-examination of ST at the Article 32 hearing. We are at a loss to see how the proffered "recantation" by ST's defense counsel changes the nature of the defense's motive to develop that testimony.

That said, even if the military judge's legal analysis was sound regarding the "similar motive" analysis, we find the military judge's legal conclusion is based on clearly erroneous facts.

The military judge asserted that at the time of the Article 32 hearing, the defense had no basis to impeach ST on her "recantation" and "will not be able to confront her on this recantation if the government were permitted to offer such evidence in the form of her Article 32 testimony at trial." A careful reading of the record reveals that it contains no actual recantation by ST. At the Article 39(a) session, ST exercised her right to not incriminate herself and requested transactional immunity. She did not recant.

Her legal counsel's proffer of a possible recantation is not evidence. This court will not speculate as to the possible existence of a recantation. In fact, the most compelling indication of what a witness would say under oath and subject to cross-examination is what that witness has previously said under oath and subject to cross-examination. As such, we find that the military judge's findings of fact reflecting that a similar motive does not exist because the defense cannot cross the victim on her "recantation," clearly erroneous.

## CONCLUSION

Based upon our review of the record, the appeal of the United States is granted. The military judge's ruling to deny the government's motion to admit ST's testimony provided at appellee's Article 32, UCMJ, investigative hearing is, therefore, reversed. The appellee's court-martial may proceed to trial in accordance with Rule for Courts-Martial 908(c)(3).

Senior Judge COOK and Judge HAIGHT concur.

FOR THE COURT:

MALCOLM H. SQUIRES, JR.
Clerk of Court