# UNITED STATES NAVY-MARINE CORPS
# COURT OF CRIMINAL APPEALS
# WASHINGTON, D.C.

**Before**
**J.R. MCFARLANE, K.M. MCDONALD, M.C. HOLIFIELD**
**Appellate Military Judges**

**UNITED STATES OF AMERICA**

**v.**

**LUIJI R. PIERRE**
**LANCE CORPORAL (E-3), U.S. MARINE CORPS**

**NMCCA 201300257**
**GENERAL COURT-MARTIAL**

**Sentence Adjudged**: 6 February 2013.
**Military Judge**: CAPT Jeremiah Sullivan III, JAGC, USN.
**Convening Authority**: Commanding General, Training Command, Quantico, VA.
**Staff Judge Advocate's Recommendation**: LtCol M.E. Sayegh, USMC.
**For Appellant**: LT Carrie E. Theis, JAGC, USN.
**For Appellee**: Maj Crista D. Kraics, USMC.

**23 September 2014**

---------------------------------------------------------
**OPINION OF THE COURT**
---------------------------------------------------------

**THIS OPINION DOES NOT SERVE AS BINDING PRECEDENT, BUT MAY BE CITED AS PERSUASIVE AUTHORITY UNDER NMCCA RULE OF PRACTICE AND PROCEDURE 18.2.**

PER CURIAM:

A military judge sitting as a general court-martial convicted the appellant, contrary to his pleas, of two specifications of aggravated sexual assault, and one specification of abusive sexual contact, in violation of Article 120, UCMJ, 10 U.S.C. § 920. The military judge sentenced the appellant to eight years of confinement, forfeiture of all pay

and allowances, reduction to pay grade E-1, and a dishonorable discharge.  The convening authority (CA) approved the sentence as adjudged.

The appellant raises five assignments of error: First, that the military judge abused his discretion when he determined that a Criminal Investigative Division (CID) Special Agent (SA) was unavailable to appear in person to testify at trial; Second, that his sentence is unjustifiably severe; Third, that the military judge erred in calculating the maximum punishment for Charge I, Specification 2; Fourth, that his convictions are factually and legally insufficient; and lastly, that his Officer-in-Charge (OIC) unlawfully influenced all of the witnesses to Charge I, Specification 2 when he characterized the allegation against the appellant as a "sexual assault" immediately after the event was reported.

After carefully considering the record of trial and the submissions of the parties, we conclude that the findings and the sentence are correct in law and fact, and that no error materially prejudicial to the substantial rights of the appellant occurred.  Arts. 59(a) and 66(c), UCMJ.

**Background**

The factual basis for the charges in this case arose from three different incidents with three different women.

In June 2011, the appellant showed up drunk at a hotel room being rented by LCpl H and her boyfriend, LCpl C, asking if he could sleep in their room.  LCpl H, who had answered the door while Lance Corporal (LCpl) C slept, told the appellant that he could sleep on the floor.  The next morning, LCpl H awoke to the appellant penetrating her vagina with his fingers.  LCpl H did not tell her boyfriend what happened out of concern that he would want to "fight" the appellant.[1]  The next day, LCpl H confronted the appellant, who then apologized.  LCpl H eventually forgave the appellant, continued her relationship with him, and for months did not tell anyone what happened because she did not want him to get into trouble.  LCpl H changed her mind and reported the incident when she learned of allegations that the appellant had also sexually assaulted LCpl M.[2]

---

[1] Record at 337.

[2] The appellant was acquitted of the sexual misconduct offenses involving LCpl M.

On 28 January 2012, LCpl D invited the appellant over to watch a movie in LCpl D's barracks room. That evening, the appellant and LCpl D fell asleep while watching the movie. At around 0900, LCpl D awoke to find her sweatpants pulled down and the appellant performing oral sex on her. She then testified that she pushed the appellant away and told him to get out of her room. Although LCpl D did not immediately report the incident, the next day she told her Platoon Sergeant what happened. The report then went up through LCpl D's chain-of-command. That evening, LCpl D went to the hospital and underwent a sexual assault examination.

In July 2012, the appellant attended another off base hotel room party. Included in this group was LCpl M2, who was at the party with her boyfriend LCpl M3. The appellant and LCpl M2 were acquaintances from MOS school. After several hours of everyone drinking, LCpl M2 laid down fully clothed with LCpl M3. The appellant lay down next to them on the same bed. Sometime later, LCpl M3 got up went outside to make a call. Upon his return, he saw the appellant on top of LCpl M2 with his hands between her legs, trying to lift the top of her dress. LCpl M3 grabbed the appellant and attempted to drag him out of the room. It was at this point that LCpl M2 woke up confused and asked what was going on. Eventually, LCpl M2 reported the incident to her chain of command and went to the hospital for a sexual assault examination.

When the appellant's OIC learned of the incident, he had his unit conduct their own investigative inquiry, which he started by addressing his Marines about a "sexual assault" that occurred the night before.[3]

Additional facts necessary to resolve the assignments of error are included below.

## Witness Unavailability Determination

In his first assignment of error, the appellant claims that the military judge abused his discretion when he determined that CID SA Nixon was unavailable to appear in person at trial. The following facts are relevant to this assignment of error.

SA Nixon, who took the appellant's statement in this case, was severely injured in a parachuting accident following the

---

[3] Record at 744.

investigation.[4]  His injuries included multiple fractures to his spine and feet.  Due to the extent of his injuries, and the fact he was in a lot of pain, trial counsel moved to have the military judge make an availability determination and allow SA Nixon to testify via video teleconferencing (VTC).  After considering evidence from SA Nixon's treating physician that he was medically able to travel provided that he did so with a companion, and had the space and mobility one is afforded when flying First Class, the military judge denied the request and ordered the Government to either: (1) fly counsel out to Ft. Bragg, North Carolina to depose SA Nixon; or, (2) fly SA Nixon and a family member First Class to the trial venue in Arizona.

Approximately half-way into the Government's case, trial counsel proffered that: (1) SA Nixon expressed an "unwillingness to come," and (2) that when SA Nixon's command learned of his pending travel, his battalion commander independently determined that SA Nixon was not medically able to travel and refused to let him fly to the trial.  In fact, when SA Nixon's battalion commander learned of his travel plans, his command "even attempted to contact the doctor to see if she would change her opinion"[5] to say that SA Nixon was not medically fit to travel, even with First Class accommodations.  After hearing trial counsel's proffer and reviewing email traffic about SA Nixon's travel,[6] the military judge revised his ruling and ordered that a deposition be taken.  The appellant's defense team, who did not want to take a deposition, then withdrew its original objection to having SA Nixon testify via VTC.  Thereafter, SA Nixon provided testimony from Ft. Bragg, via VTC, regarding his interview of the appellant after the incident with LCpl D.

A military judge's determination of witness unavailability, and whether the Government made a good faith effort to make the witness available, is reviewed for an abuse of discretion.[7]  "Findings of fact are affirmed unless they are clearly erroneous; conclusions of law are reviewed de novo."[8]  "If an

---

[4] SA Nixon is a Warrant Officer 3 in the United States Army.

[5] Record at 769.

[6] AE XXV.

[7] *United States v. Vanderwier*, 25 M.J. 263, 266 (C.M.A. 1987).

[8] *United States v. Rader*, 65 M.J. 30, 32 (C.A.A.F. 2007) (citations omitted).

4

abuse of discretion is found, the case will be reversed unless the error is harmless beyond a reasonable doubt."[9]

When determining witness availability, a military judge should consider several factors, including "the importance of the testimony, the amount of delay necessary to obtain the in-court testimony, the trustworthiness of the alternative to live testimony, the nature and extent of earlier cross-examination, the prompt administration of justice, and any special circumstances militating for or against delay."[10]  Where a witness's absence is due to illness, a court should also consider the nature of the illness and its probable duration.[11]

Applying those factors to the case at bar, we find that the military judge did not abuse his discretion: (1) SA Nixon was primarily a foundational witness for his videotaped interview of the appellant; (2) the interview was never offered or admitted into evidence; (3) a mutually agreed upon transcript of the interview was admitted without defense objection; (4) the appellant ultimately withdrew his objection to using VTC; (5) this was a military judge alone trial; and, (6) there is no dispute as to the reliability or trustworthiness of SA Nixon's statements via VTC.

Further, assuming *arguendo* that it was an abuse of discretion to find that SA Nixon was unavailable; we find that, for the reasons set forth above, any such error would have been harmless beyond a reasonable doubt.

**Sentence Severity**

"Sentence appropriateness involves the judicial function of assuring that justice is done and that the accused gets the punishment he deserves."[12]  This requires "'individualized consideration' of the particular accused 'on the basis of the

---

[9] *United States v. Moss*, 63 M.J. 233, 236 (C.A.A.F. 2006) (citing *United States v. Israel*, 60 M.J. 485, 488 (C.A.A.F. 2005)) (additional citations omitted).

[10] *United States v. Cokeley*, 22 M.J. 225, 229 (C.M.A. 1986).

[11] *United States v. Cabrera-Frattini*, 65 M.J. 241, 245-46 (citation omitted).

[12] *United States v. Healy*, 26 M.J. 394, 395 (C.M.A. 1988).

nature and seriousness of the offense and character of the offender.'"[13]

In this case the appellant was found guilty of sexually assaulting three fellow Marines over a 13-month-period. After establishing friendship and trust with his fellow Marines, he would sexually assault them while they were sleeping. Even after considering the appellant's "tough upbringing" and victim preferences for a lighter sentence, we are convinced that the sentence awarded was appropriate. Granting the appellant the requested relief would amount to an act of clemency which is left to the "command prerogative" of the CA. Accordingly, we decline to grant relief.

### Improper Calculation of Maximum Punishment

In his third AOE, the appellant argues that the military judge erred when he calculated the maximum punishment for his abusive sexual contact conviction under Article 120, UCMJ.[14] The military judge calculated the maximum punishment for this offense to include confinement for thirty years and a dishonorable discharge. The appellant argues that because the President had not defined the maximum punishments under Article 120, UMCJ, at the time he committed his criminal misconduct, the maximum punishment that the appellant could receive was limited to the jurisdictional maximum of a summary court-martial. For the reasons set forth in our opinion in *United States v. Booker*, 72 M.J. 787, 807 (N.M.Ct.Crim.App. 2013), we disagree and find this assignment of error without merit.[15]

### Legal and Factual Sufficiency

The appellant's fourth assignment of error claims that the guilty findings are legally and factually insufficient. The appellant does not allege there was insufficient evidence for any one element of any of these offenses, but rather argues that the primary evidence against him, the testimony of the victims

---

[13] *United States v. Snelling*, 14 M.J. 267, 268 (C.M.A. 1982) (quoting *United States v. Mamaluy*, 27 C.M.R. 176, 180-81 (C.M.A. 1959)).

[14] Charge I, Specification 2. At the time of trial, the President had not yet established the maximum punishments for Article 120 offenses that occurred after June 28, 2012.

[15] While the appellant acknowledges that we rejected his argument in *Booker*, 72 M.J. at 807, he raises this AOE "to preserve the issue." Appellant's Brief of 13 Nov 2013 at 18.

6

and other witnesses who testified at trial, "had significant credibility problems."[16]  The appellant cites a number of issues in the respective testimonies of all three victims before, during, or after the alleged incidents that challenge the credibility of the evidence to a degree where the overall evidence is insufficient to sustain his convictions.

The test for legal sufficiency is whether, considering the evidence in the light most favorable to the Government, any rational trier of fact could have found the elements of the offense beyond a reasonable doubt.[17]  The test for factual sufficiency is whether, after weighing all the evidence in the record of trial and recognizing that we did not see or hear the witnesses, this court is convinced of the appellant's guilt beyond a reasonable doubt.[18]  Proof beyond a reasonable doubt does not mean that the evidence must be free of conflict.[19]  The fact finders may believe one part of a witness' testimony and disbelieve another.[20]  When weighing the credibility of a witness, this court, like a fact-finder at trial, examines whether discrepancies in witness testimony resulted from an innocent mistake, such as a lapse of memory, or a deliberate lie.[21]

Although there were variations in the testimony offered by the Government's witnesses, the differences were not so great as to seriously call any witness' credibility into question. Moreover, the fact that the appellant's version of events differs significantly from those of the victims is not sufficient, in and of itself, to render his convictions factually or legally insufficient.  As noted above, fact finders are free to believe all or part of one witnesses testimony, while disbelieve the testimony of other witnesses.  After carefully reviewing the entire record, and taking into consideration the fact that we did not see and hear the

---

[16] *Id.* at 20-21.  ]

[17] *United States v. Turner*, 25 M.J. 324, 325 (C.M.A. 1987); *United States v. Reed*, 51 M.J. 559, 561-62 (N.M.Crim.Ct.App. 1999), *aff'd*, 54 M.J. 37 (C.A.A.F. 2000); *see also* Art. 66(c), UCMJ.

[18] *Turner*, 25 M.J. at 325; *see also* Art. 66(c), UCMJ.

[19] *United States. v. Goode*, 54 M.J. 836, 841 (N.M.Ct.Crim.App 2001).

[20] *Id.*

[21] *Id*. at 844.

witnesses personally, we find the witnesses' testimony more credible than that of the appellant, and therefore find the evidence sufficient to establish the appellant's guilt beyond a reasonable doubt.  Accordingly, we find his convictions both factually and legally sufficient.

## Unlawful Command Influence

In his final assignment of error, the appellant claims for the first time on appeal that unlawful command influence (UCI) "influenced all witnesses in the case, to include the victim."[22] We disagree.

UCI has often been referred to as "'the mortal enemy of military justice.'"[23]  Even the appearance of UCI has the potential to be "'as devastating to the military justice system as the actual manipulation of any given trial.'"[24]  Apparent UCI occurs when "a reasonable member of the public, if aware of all the facts, would have a loss of confidence in the military justice system and believe it to be unfair."[25]  Allegations of unlawful command influence are reviewed *de novo.*[26]

For appellate consideration of UCI claims, the appellant bears the burden on appeal to "(1) show facts which, if true, constitute [UCI]; (2) show that the proceedings were unfair; and (3) show that [UCI] was the cause of the unfairness."[27]  When analyzing UCI on appeal, we view the alleged UCI retrospectively in terms of evaluating the actual impact it had on the completed trial.

---

[22] Appellant's Brief at 12.

[23] *United States v. Gore,* 60 M.J. 178, 178 (C.A.A.F. 2004) (quoting *United States v. Thomas,* 22 M.J. 388, 393 (C.M.A. 1986)).

[24] *United States v. Ayers,* 54 M.J. 85, 94-95 (C.A.A.F. 2000) (quoting *United States v. Allen,* 33 M.J. 209, 212 (C.M.A. 1991)).

[25] *United States v. Allen,* 31 M.J. 572, 590 (N.M.C.M.R. 1990) (citing *United States v. Rosser,* 6 M.J. 267 (C.M.A. 1979)) (additional citation omitted).

[26] *United States v. Harvey*, 64 M.J. 13, 19 (C.A.A.F. 2006); *United States v. Villareal*, 52 M.J. 27, 30 (C.A.A.F. 1999); *United States v. Wallace*, 39 M.J. 284, 286 (C.M.A. 1994).

[27] *United States v. Biagase*, 50 M.J. 143, 150 (C.A.A.F. 1999) (citations omitted).

Here, we find that no evidence that the OIC's statements adversely impacted the fairness of his trial. There is no indication in the record of any witness testimony being influenced or changed by the OIC describing what happened as sexual assault, nor is there any evidence that any of the witnesses felt pressure to testify in any specific way as a result.[28] Accordingly, we find this assignment of error without merit.

## Conclusion

Accordingly, the findings and the sentence, as approved by the CA, are affirmed.

For the Court

R.H. TROIDL
Clerk of Court

---

[28] *See United States v. Thomas*, 22 M.J. 388, 397 (C.M.A. 1986) (finding no UCI with regard to witnesses if "everyone who had relevant information testified at trial and that none of these witnesses felt under any pressure to testify in a certain way").